# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUTZ SURGICAL PARTNERS, PLLC, *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>AETNA, INC., *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 15-cv-2595-BRM-TJB |

## MOTION TO STRIKE THE EXPERT REPORTS OF DR. JOHN A. RIZZO AND STEVEN L. HENNING FILED IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF CLASS CERTIFICATION

Edward S. Wardell
Patricia A. Lee
**CONNELL FOLEY LLP**
85 Livingston Avenue
Roseland, NJ 07068
PLee@connellfoley.com
(973) 535-0500

Richard J. Doren (*pro hac vice*)
Christopher Chorba (*pro hac vice*)
Heather L. Richardson (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
CChorba@gibsondunn.com
(213) 229-7000

*Attorneys for Defendants and Counterclaim Plaintiffs*

June 6, 2017

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT.........................1

II.  BACKGROUND...................................................................4

    A.  Plaintiffs' Efforts To Avoid Expert Designations ...........................4

    B.  Plaintiffs' Efforts To Avoid Disclosing Their Damages Theories ...................................................................8

III.  LEGAL STANDARDS GOVERNING THIS MOTION........................10

IV.  PLAINTIFFS' EXPERT REPORTS SHOULD BE STRICKEN BECAUSE THEY DO NOT REBUT AETNA'S EXPERT AND THEY INTRODUCE NEW THEORIES THAT WERE NOT DISCLOSED DURING DISCOVERY.................................................12

    A.  Aetna's Expert, Dr. Daniel Kessler, Provided An Opinion Based On Plaintiffs' Complaint, Discovery Responses, And Motion ...................................................................12

    B.  Plaintiffs Concede That Dr. John Rizzo Did Not Offer Any Opinions Relevant To Class Certification....................................13

    C.  Dr. Steven Henning Introduced New Methods Of Tracking And Calculating Damages And New Remedies Theories ....................15

V.  CONCLUSION.................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Asbestos Prod. Liab. Litig. (No. VI)*,
Nos. 09-CV-74351X, 09-CV-74410-File, 2012 WL 661673 (E.D.
Pa. Feb. 8, 2012) ................................................................. 10, 11, 12, 17

*Byrd v. Aaron's, Inc.*,
No. 1:11-CV-00101, 2017 WL 1093286 (W.D. Pa. Mar. 22, 2017) 10, 11, 12, 17

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) ........................................................... 1, 11, 14, 15

*Emerick v. U.S. Suzuki Motor Corp.*,
750 F.2d 19 (3d Cir. 1984) ............................................................... 11

*Franco v. Conn. Gen. Life Ins. Co.*,
299 F.R.D. 417 (D.N.J. 2014) ..................................................... 12, 15

## Rules

Fed. R. Civ. P. 23(b)(3) .................................................................. 1, 14

Fed. R. Civ. P. 26 ............................................................................ 5

Fed. R. Civ. P. 26(a)(2)(A) ........................................................... 4, 5, 6

Fed. R. Civ. P. 26(a)(2)(D)(ii) ........................................................ 10

Fed. R. Civ. P. 37 ........................................................................... 11

Fed. R. Civ. P. 37(c)(1) ................................................................... 11

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs submitted improper "rebuttal" expert reports in an attempt to make up for deficiencies in their affirmative case for class certification.  Plaintiffs seek to certify a damages class under Rule 23(b)(3), but, despite carrying the burden of proof, their Motion for Class Certification did not even attempt to show a method of proving damages on a classwide basis as required under *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).  Instead, they relegated their damages theory to a conclusory footnote (Dkt. 116 at 34 n.18) and did not submit any supporting expert reports.

Now, many months after filing their Motion and after Aetna filed its Opposition (and expert report), Plaintiffs' "rebuttal" experts attempt to introduce brand new damages theories that were never previously disclosed—not through the Court-ordered disclosure deadlines, not in response to Aetna's many specific discovery requests asking Plaintiffs to identify their remedial theories, and not in their moving papers.

Despite bearing the burden of proof for class certification, Plaintiffs apparently had no intention of providing experts to show a method of proving damages on a classwide basis, and instead planned to reveal their damages theories and expert opinions *after* seeing Aetna's opposition arguments.  This has been their tactic from the outset of this lawsuit:  During the discovery phase, Plaintiffs' counsel went so far as to demand that *Aetna* serve its expert reports in support of its

Opposition before Plaintiffs even filed their Motion.  Magistrate Judge Bongiovanni saw through Plaintiffs' improper attempt to shift the burden of proof, and declined to order a schedule that would allow Plaintiffs to fashion their class certification brief around Aetna's *opposition* theories.

Nonetheless, Plaintiffs have attempted to secure indirectly what Magistrate Judge Bongiovanni refused to allow them to obtain directly:  they did not file any affirmative expert reports and Aetna's expert—Dr. Daniel Kessler—formulated an opinion based on Plaintiffs' allegations in their Complaint and their arguments in the Motion for Class Certification, as well as their existing discovery responses.  In particular, Dr. Kessler used as a baseline Plaintiffs' sole assertion that damages consisted of the total amount of offsets.  Based on this disclosed theory of damages, Dr. Kessler provided an opinion regarding whether there was an economic basis for *any* damages from the offset process, whether any such damages could be calculated on a classwide basis without individualized inquiry, and who benefits and/or is harmed by offsets.  (*See generally* Dkt. 122-7, App. at 84-111.)

Plaintiffs' two "rebuttal" expert reports by Dr. John Rizzo and Steven Henning do not contradict or rebut Dr. Kessler's expert opinions or his report. Instead, they introduce entirely new, never-before-disclosed theories of damages: Dr. Rizzo claims that offsets cause "reputational harm," damage to the doctor-patient relationship, and decreased quality of care.  Not surprisingly, even Plaintiffs'

counsel agreed during the meet and confer process that Dr. Rizzo's theories are *entirely new*, and that Plaintiffs offered Dr. Rizzo's report not to advance any opinions relevant to class certification, but supposedly to "rebut" Dr. Kessler's opinion that offsets did not harm providers.  As a result of this admission, it is not clear why Plaintiffs offered Dr. Rizzo's report at all, or why they did not disclose this limitation in any of their filings, other than in an attempt to confuse the analysis. In any event, Plaintiffs' concession confirms the fundamental disconnect between their theories of harm and damages—a plain violation of *Comcast*'s instruction that the two must be linked.  The Court should strike Dr. Rizzo's report and not consider it in ruling on Plaintiffs' Motion for Class Certification.

Dr. Henning fares no better.  He purports to identify a new remedy of "reversing" or "unwinding" offsets, and he also advocates a "pro-rata" allocation of offsets between particular types of health care plans.  But once again, these theories were _not_ previously disclosed in response to Aetna's specific discovery requests, they were _not_ part of Plaintiffs' affirmative motion for class certification, and they were _not_ analyzed in Dr. Kessler's report.  This ambush should not be condoned by the Court.  Therefore, Aetna respectfully requests that the Court strike Dr. Henning's report in its entirety.

## II.    BACKGROUND

### A.    Plaintiffs' Efforts To Avoid Expert Designations

The first scheduling order entered in these consolidated cases contemplated that the parties would first identify the "names, curriculum vitae, and subject areas of expected testimony" for experts regarding class certification while fact discovery was still ongoing, and would later file "any expert reports supporting [or opposing] the motion" at the same time as the briefs were filed.  (Nov. 6, 2015 Scheduling Order [Dkt. 82] (setting initial designation deadlines).)[1]

When the initial designation deadline arrived, Plaintiffs did not designate any experts.  (Declaration of Christopher Chorba ("Chorba Decl."), ¶ 3.)  After Aetna designated its expert, Plaintiffs' counsel asserted that Aetna's "expert disclosure does not comply with Rule 26(a)(2)(A) because it fails to include the experts' written reports."  (*Id.* ¶ 4, Ex. 1.)  Aetna's counsel responded on the same day by directing Plaintiffs' counsel to the November 2015 scheduling order, which set this two-step expert designation process (disclosure of name and subject matter of expert's anticipated testimony, then reports with class certification briefing), and reminded Plaintiffs' counsel of the parties' negotiations over that schedule, in which Aetna expressly discussed this sequence and approach.  (*Id.*)  The parties met

---

[1] The sequencing in the November 6, 2015 Scheduling Order was retained, but the dates were changed in a later Scheduling Order dated July 22, 2016.  (Dkt. 100.)

and conferred, but could not reach an agreement as Plaintiffs' counsel insisted that

Aetna must disclose its expert reports months before Plaintiffs filed any class

certification motion.  (*Id.*)[2]

On June 23, 2016, the parties submitted a joint letter to Magistrate Judge

Bongiovanni outlining their dispute.  (*Id.* ¶ 5, Ex. 2.)  Plaintiffs stated that they

"believe Aetna's expert reports should have accompanied its expert designations,

with Plaintiffs then designating and offering any necessary rebuttal experts and their

reports" (*id.*), even though discovery was still in process and many depositions had

not yet even been taken, and Plaintiffs had not yet moved for class certification.

Aetna explained that "[t]he Scheduling Order . . . contemplated that the Parties

would disclose their experts *before* class certification briefing commenced, and

serve their expert *reports* concurrently with the class certification briefing."  (*Id.*)

---

[2] During this discussion, Plaintiffs' counsel selectively quoted Fed. R. Civ. P. 26's
default requirement that an expert disclosure "be accompanied by a written report"
and again asked "how can [Plaintiffs] provide a rebuttal expert by July 3 if [they]
don't have a written report to rebut?"  Aetna's counsel responded by directing
Plaintiffs' counsel to an omitted portion of Plaintiffs' cited Rule 26, which states,
"*[u]nless otherwise stipulated or ordered by the court*, this disclosure must be
accompanied by a written report."  (Emphasis added.)  Aetna's counsel explained
that "[t]he parties did stipulate, and the Court did order, that the reports would
follow the designations."  Plaintiffs also attempted to capitalize on an inadvertent
typo in the November 2015 scheduling order, which referenced expert depositions
occurring before the close of fact discovery, and before the parties filed their briefs
or expert reports.  (Dkt. 82 at 3.)  This was inadvertent, as it makes no sense for
expert depositions to occur *before* expert reports are filed.   It was corrected in
subsequent scheduling orders.  (*E.g.*, July 22, 2016 Scheduling Order [Dkt. 100].)

Aetna further explained that "[t]he parties also specifically discussed and agreed to this sequence during their meet and confer sessions last fall, during which time Aetna's counsel explained the rationale for this two-tiered designation and report schedule: the parties should know the names and general subject matters of potential experts *before* the close of fact discovery, but they should not be required to submit reports until *after* the close of fact discovery." (*Id.*)

The parties had a conference with Judge Bongiovanni on June 24, 2016, regarding this dispute. (Chorba Decl. ¶ 6.) During that conference, Judge Bongiovanni recognized that the November 2015 scheduling order set forth the agreed sequencing of expert disclosure and reports. (*Id.*) The Court also agreed that the burden of proof should not be inverted by ordering Aetna to prepare and serve an expert report *before* Plaintiffs filed their class certification motion, which would allow Plaintiffs to fashion their brief around what Aetna's opposition expert stated. (*Id.*) Following continued meet and confer efforts, the parties submitted— and the Court entered—an amended scheduling order setting July 25, 2016, as Plaintiffs' deadline to designate rebuttal experts, among other extensions and changes to the deadlines. (Dkt. 100.)

This should have been the end of the dispute. But when the July 25 deadline arrived, Plaintiffs served their "Identification of Possible Class Certification Rebuttal Experts," which listed a total of *eight* "possible" experts across the three

consolidated cases. (*Id.* ¶ 7, Ex. 3.) For each and every listed expert, Plaintiffs stated that the expert "may rebut opinions offered by Defendants' experts," and provided no additional detail. (*Id.*) Aetna notified Plaintiffs that these designations were deficient, because of their sheer quantity and because they did "not provide the subject areas of expected testimony for each expert." (*Id.* ¶ 8, Ex. 3.) Plaintiffs' counsel responded that they would not provide a description of the anticipated areas of testimony because "they are *rebuttal* experts and thus by nature would only rebut opinions offered by your experts." (*Id.*) Plaintiffs' counsel then reiterated their request for Aetna's expert reports, claiming that "if you will agree to give us your expert reports now, we would agree to be more specific. But absent knowing what your experts are going to say, we have no further detail to provide." (*Id.*)

Again at an impasse, notwithstanding the previous ruling, the parties submitted a joint letter to the Court. (*Id.* ¶ 9, Ex. 3) The parties had another conference with Judge Bongiovanni on September 9, 2016, and although she declined to strike the expert designations, she did order Plaintiffs to limit their rebuttal experts to only three of the eight. (*Id.* ¶ 10) Plaintiffs did not serve any updated designation following this conference, and following *another* phone conference on October 21, 2016, the Court ordered Plaintiffs' counsel to identify their three rebuttal experts by no later than November 4. (*Id.* ¶¶ 10-11) Plaintiffs' counsel finally identified three experts on that date, although their designation still

did not specify which case(s) each expert would analyze or the general subject matter of the testimony.  (*Id.* ¶ 12, Ex. 4.)

Aetna filed its expert report from Dr. Daniel Kessler with its Opposition to the Motion for Class Certification.  (Dkt. 122-7, App. at 84-111.)  Subsequently, Plaintiffs filed two expert reports that both purported to rebut Dr. Kessler's report, but both of which offered entirely new theories of damages.  (Dkts. 127-7, 127-10.)

### B.     Plaintiffs' Efforts To Avoid Disclosing Their Damages Theories

Plaintiffs' experts' damages theories are an abrupt departure from the information provided during extensive discovery in this action.  Aetna served an interrogatory directly seeking information regarding Plaintiffs' theories of damages/harm:

> **INTERROGATORY NO. 9**:   IDENTIFY all facts that support YOUR claim that YOU and/or members of the putative class suffered harm and/or damage as a result of AETNA's conduct alleged in the COMPLAINT.

(Dkt. 122-7, App. at 135.)  Plaintiffs responded that they "suffered harm and or damage because Aetna failed to pay [Plaintiffs] (and other class members) benefits due under Aetna Plans."  (*Id.*)  They defined the "damage" as "for each failure to pay, the difference between the benefits due under the Plans and the amount paid to [Plaintiffs] under the Plan, plus transactional costs in attempting to recover, plus interest and attorney's fees and costs."  (*Id.*)

To be clear, Aetna served three more interrogatories in a second set of interrogatories:

> **INTERROGATORY NO. 24**:  IDENTIFY all facts regarding the specific monetary relief YOU seek in this action.
>
> **INTERROGATORY NO. 25**:  If different in any respect from the specific monetary relief YOU seek in this action, IDENTIFY all facts regarding the specific monetary relief the putative class seeks in this action.
>
> **INTERROGATORY NO. 26**: Separately for YOURSELF and the putative class, IDENTIFY the amount of damages and/or monetary relief that YOU and the putative class suffered and seek to recover in this ACTION.

(Dkt. 122-7, App. at 169-71.)

Plaintiffs' initial responses to Interrogatory No. 24 ("specific monetary relief" for Plaintiffs) stated that "Aetna already possesses information from which the principal component of damages could be calculated: namely, the amount of cross-plan offsets taken against Lutz for any reason during the class period." (Dkt. 122-7, App. at 169.)  In their response to Interrogatory No. 25 ("specific monetary relief" for putative class), Plaintiffs claimed that "Lutz and the putative class seek damages under the same theories."  (*Id.* at 170.)  Plaintiffs responded to Interrogatory No. 26 ("amount of damages and/or monetary relief") as follows:

> Lutz has not calculated damages for itself or for the class and there is no reason to do so at this juncture.  Lutz has set forth its theories of relief, and the principal component of damages will not be difficult to calculate once the court requires Aetna to run simple computer programs to calculate the amount of offsets Aetna took against class members during the class period.

(*Id.* at 171.)

When Aetna requested further clarification, Plaintiffs responded via letter on October 31, 2016: "Plaintiffs could not have been clearer in our earlier response to your interrogatories seeking our theory on calculation of damages." (Chorba Decl. ¶ 13, Ex. 5.) They quoted their interrogatory responses, and stated further, "[i]n other words, damages are equal to (a) amounts of all offsets taken by Aetna, plus (b) Plaintiffs' costs in attempting to recover same. Aetna assiduously tracks to the penny (in OPT and other systems) the amount of (a), and Plaintiffs will provide facts concerning (b) at an appropriate time in merits discovery." (*Id.*) On November 21, only a few weeks before filing their Motion, Plaintiffs supplemented their response to Interrogatory No. 24, adding only that any summary of damages would come "[a]fter the current class certification phase of this action." (Dkt. 122-7, App. at 170.)

## III.   LEGAL STANDARDS GOVERNING THIS MOTION

Plaintiffs' expert reports should be stricken because they do not satisfy the basic requirements for rebuttal expert reports under the Federal Rules of Civil Procedure. Rebuttal expert testimony is proper only "if the evidence is intended *solely to contradict or rebut* evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added). Rebuttal reports "cannot be used to correct a party's oversights in its case-in-chief." *Byrd v.*

*Aaron's, Inc.*, No. 1:11-CV-00101, 2017 WL 1093286, at *4 (W.D. Pa. Mar. 22, 2017); *see also In re Asbestos Prod. Liab. Litig. (No. VI)*, Nos. 09-CV-74351X, 09-CV-74410-File, 2012 WL 661673, at *1 (E.D. Pa. Feb. 8, 2012) ("[E]vidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof.") (quoting *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984)).  "[T]o qualify as proper rebuttal," a report cannot "simply address the same general subject matter as a previously-submitted report."  *Byrd*, 2017 WL 1093286, at *4.  Rather, the rebuttal report must "directly contradict or rebut the actual contents of that prior report."  *Id.*; *see also In re Asbestos Prod. Liab. Litig.*, 2012 WL 661673, at *3-4 (striking rebuttal report "presenting few, if any, refuting arguments made by the opposing party").

Rule 37 vests the Court with broad discretion in policing discovery abuses. It provides that a party that does not comply with Rule 26's mandatory disclosure requirements (including expert disclosures) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).

## IV.  PLAINTIFFS' EXPERT REPORTS SHOULD BE STRICKEN BECAUSE THEY DO NOT REBUT AETNA'S EXPERT AND THEY INTRODUCE NEW THEORIES THAT WERE NOT DISCLOSED DURING DISCOVERY

Plaintiffs were required to—but did not—provide a method of proving

damages that is "capable of measurement on a classwide basis" and "consistent

with [their] liability case" as part of their Motion for Class Certification.  *Comcast*,

133 S. Ct. at 1433; *Franco v. Conn. Gen. Life Ins. Co.*, 299 F.R.D. 417, 429

(D.N.J. 2014).  They cannot use their "rebuttal" reports to correct this deficiency in

their case-in-chief.  *See, e.g.*, *Byrd*, 2017 WL 1093286, at *4; *see also In re

Asbestos Prod. Liab. Litig.*, 2012 WL 661673, at *1.  Plaintiffs' "rebuttal" reports

attempt to do just that, and they should be stricken as a result.

### A.  Aetna's Expert, Dr. Daniel Kessler, Provided An Opinion Based On Plaintiffs' Complaint, Discovery Responses, And Motion For Class Certification

Plaintiffs offered no expert reports in support of their Motion for Class

Certification and did not attempt to carry their burden of demonstrating a method

of proving damages on a classwide basis as required under *Comcast*.  Aetna

submitted an expert report from Stanford economist Dr. Daniel Kessler in support

of its Opposition to Plaintiffs' Motion, and he based his analysis on the theories

that Plaintiffs disclosed in their Complaint, Motion for Class Certification, and

discovery responses.  (Dkt. 122-7, App. at 89-91; *supra* 8-10.)  Dr. Kessler offered

opinions regarding the economic basis for damages, whether any damages could be

calculated on a classwide basis, the primary beneficiaries of offsets, and whether any putative class members are harmed from the challenged conduct. (Dkt. 122-7, App. at 87.) Plaintiffs' rebuttal experts—Dr. John Rizzo and Dr. Steven Henning—both offered opinions that barely relate to Dr. Kessler's report, let alone "directly contradict or rebut" the report. In fact, both experts concede that their reports address theories that Dr. Kessler did not analyze. (*See* Dkt. 127-10 at 15 ("Dr. Kessler assume[d] that the only potential for harm among beneficiaries is financial."); Dkt. 127-7 at 5 ("[T]he Kessler Report focuses only on determining monetary damages and does not contemplate other forms of relief, such as reversing (or unwinding) cross-plan offsets . . . .").) Given that Dr. Kessler's report was based on *Plaintiffs*' limited damages and remedies allegations as of the time Aetna filed its Opposition, Plaintiffs' newly disclosed damages and remedies theories cannot be "rebuttal" to his opinion.

## B. Plaintiffs Concede That Dr. John Rizzo Does Not Offer Any Opinions Relevant To Class Certification

Dr. Rizzo introduced new theories of damages/harm that Plaintiffs never disclosed in discovery or in their Motion, that were not analyzed by Dr. Kessler (because they were not disclosed in a timely fashion), and that are not proper "rebuttal" topics. Specifically, Dr. Rizzo opines that (1) Plaintiffs suffered loss of business and damage to providers' reputation as a result of offsets and/or balance billing; (2) offsets and potential balance billing "may have an impact on the doctor-

13

patient relationship"; and (3) an offset "may adversely affect the quality of care." (Dkt. 127-10 at 10, 15.)  But Plaintiffs' Complaint, Motion, and discovery responses never mentioned these damages theories, even in response to Aetna's specific and targeted discovery requests.  (Dkt. 122-7, App. at 135, 169-71.)

When Aetna raised its objection to these new theories, Plaintiffs' counsel admitted that, although they filed Dr. Rizzo's rebuttal report concurrently with their class certification reply brief, the report does not actually contain *any* opinions relevant to class certification.  (Chorba Decl. ¶ 16.)  Instead, Plaintiffs' counsel claimed that they used Dr. Rizzo to rebut Dr. Kessler's opinion that providers suffered no harm from offsets.  (*Id.*)

This admission confirms that Plaintiffs have failed to align their classwide theory of harm with their damages theory as required by *Comcast*.  As the Supreme Court explained, "'[t]he first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*.'" *Comcast*, 133 S. Ct. at 1435 (quoting Federal Judicial Center, Reference Manual on Scientific Evidence 432 (3d ed. 2011)).  A "methodology that identifies damages that are not the result of the wrong" does not establish that damages are capable of measurement on a classwide basis.  *Id.* at 1434-35.  It was for that reason that the Supreme Court held in *Comcast* that Rule 23(b)(3) certification was inappropriate, because the plaintiffs' damages model in that case purported to

quantify damages that did not flow from plaintiffs' specific theory of harm. *Id.* at 1435. Here, Plaintiffs admitted that their theory of harm as articulated by Dr. Rizzo does not relate to the theories of damages that they advance in their class certification briefing. As such, Dr. Rizzo's report—and Plaintiffs' damages theories—do not satisfy *Comcast*, and this Court should disregard them in ruling on the Motion for Class Certification.

### C.   Dr. Steven Henning Introduced New Methods of Tracking And Calculating Damages And New Remedies Theories

Dr. Henning purports to offer new methods of proving damages on a classwide basis that rely in large part on a new remedies theory that was not previously disclosed. He opines regarding "methods for providing relief to class members that do not require individualized inquiry" (Dkt. 127-7 at 2)—in other words, he opines on methods to calculate damages "capable of measurement on a classwide basis," which was Plaintiffs' burden to establish at the outset in their opening Motion. *Comcast*, 133 S. Ct. at 1433; *Franco*, 299 F.R.D. at 429. These new "methods" and remedies theories exceed the scope of Dr. Kessler's report, and the Court should strike Dr. Henning's rebuttal report.

**1.   *New Method of Calculating Classwide Damages.*** Dr. Henning's new method of calculating damages on a classwide basis belonged in (and was noticeably absent from) Plaintiffs' Motion. *Comcast*, 133 S. Ct. at 1433; *Franco*, 299 F.R.D. at 429. He now opines that "cross-plan offsets can be identified and

their amounts determined through computer modeling and execution of specially designed queries based on the data housed in several Aetna databases." (Dkt. 127-7 at 2, 10.)  But he makes sweeping—and inaccurate—statements regarding Aetna's databases without citing to any supporting evidence.  (*E.g.*, Dkt. 127-7 at 6 ("PEOBs are generated from Aetna's AEPPAYS, therefore, all the information about the original overpayment and the subsequent offset is housed in AEPPAYS. Furthermore, the information relating to claim payments and offsets flows from AEPPAYS to the CRS.").)  In particular, Dr. Henning mischaracterizes and/or ignores the testimony of Aetna's witnesses (*e.g.*, Andrew Hill and Amy Saraco (Dkt. 127-7 at 6-7 n.18)), and he ignores the extensive record outlining Aetna's actual process for offsets.  Not only is this new argument improper on rebuttal because it was not in Plaintiffs' case-in-chief or in Dr. Kessler's report, but it is also based on mischaracterizations of the evidence.  (*See* Aetna's Surreply at 15.)

**2.  *"Pro-Rata" Allocation*.**  Dr. Henning also contends that calculating the amount of "cross-plan offsets" can be done on a "pro-rata" basis.  (Dkt. 127-7 at 8-9.)  But this opinion is not a rebuttal to Dr. Kessler's opinions—it is an entirely new calculation method that Plaintiffs failed to identify in discovery.  This oversight is even more inexcusable given that Plaintiffs' Complaint purported to identify "pro rata portion[s] of . . . offsets attributable to Lutz's patients."  (Dkt. 1 ¶ 54.)  But when Aetna served an interrogatory asking for all facts that support this

allegation, Plaintiffs responded, in part, that the pro rata allocation was "simply a mathematical calculation based on the amount billed and the amount paid," but that "***Aetna has asserted repeatedly that it does not apportion offsets to particular patients or plans*** and it has refused to provide any information on that topic. Accordingly, Lutz has no additional facts to furnish." (Dkt. 122-7, App. at 163-64 (emphasis added).) At no point did Plaintiffs supplement this response or otherwise disclose how they proposed to "apportion" any offsets on a classwide basis. Thus, Dr. Henning's entire "rebuttal" of Dr. Kessler's method for determining whether a cross-plan offset occurred and calculating the amount is based on this new theory, which is outside the scope of proper rebuttal and based on a theory that Plaintiffs themselves already explained does not apply in this case.

**3.  *"Reversing" or "Unwinding" Offsets*.**  Finally, Dr. Henning introduces a new remedy for the first time in his rebuttal report:  He opines that "cross-plan offsets could be reversed (or unwound) to restore Aetna and the class members to their standing before the offsets took place." (Dkt. 127-7 at 2.)  Dr. Henning repeats this opinion throughout his report. (*E.g.*, Dkt. 127-7 at 11, 15, 16, 18.)  But Plaintiffs never disclosed this new remedy in response to Aetna's specific discovery requests (*supra* pp. 8-10), and it is outside of the scope of proper rebuttal because Dr. Kessler did not opine on this theory.

In sum, rather than responding to or rebutting Dr. Kessler's theories, Dr.

Henning offers affirmative theories of damages and attempts to correct the omissions from Plaintiffs' case-in-chief.  For these reasons, his report should be stricken.  *Byrd*, 2017 WL 1093286 at *4; *In re Asbestos Prod. Liab. Litig. (No. VI)*, 2012 WL 661673 at *1.

## V.    CONCLUSION

Based on the foregoing, Aetna respectfully requests that the Court strike the Expert Report of Steven L. Henning (Dkt. 127-7) and the Expert Report of Dr. John A. Rizzo (Dkt. 127-10) in their entirety.  Aetna should not be forced to incur the cost of deposing these two experts, tasking its expert to rebut brand new theories, and briefing the class certification issues again.

Dated:  June 6, 2017                         Respectfully submitted,

_____/s/ Edward S. Wardell_____
Edward S. Wardell                            Richard J. Doren (*pro hac vice*)
Patricia A. Lee                              Christopher Chorba (*pro hac vice*)
**CONNELL FOLEY LLP**                        Heather L. Richardson (*pro hac vice*)
85 Livingston Avenue                         **GIBSON, DUNN & CRUTCHER LLP**
Roseland, NJ  07068                          333 South Grand Avenue
PLee@connellfoley.com                        Los Angeles, CA  90071-3197
(973) 535-0500                               CChorba@gibsondunn.com
                                             (213) 229-7000

*Attorneys for Defendants and Counterclaim Plaintiffs*