**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————
:
LUTZ SURGICAL PARTNERS PLLC,       :
*et al.*,                          :
                                   :
                Plaintiffs,        :
                                   :        Civil Action No. 15-2595-BRM-TJB
        v.                         :
                                   :
AETNA, INC., *et al.*,             :               **OPINION**
                                   :        **TEMPORARILY FILED**
                Defendants.        :            **UNDER SEAL**
———————————————————:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiffs Lutz Surgical Partners PLLC ("Lutz") and NYC Corrective

Chiropractic Care, P.C.'s ("NYC Chiro") (collectively, "Plaintiffs") Motion for Class Certification

pursuant to Federal Rules of Civil Procedure 23. (ECF No. 116.) Also before this Court is

Defendants Aetna, Inc. and Aetna Life Insurance Company's (together, "Aetna") Motion to Strike

Plaintiffs' Rebuttal Expert Reports (ECF No. 130) filed in further support of their Motion for Class

Certification (ECF Nos. 127-7 and 127-10). All motions are opposed. (ECF Nos. 122 and 134.)[1]

Pursuant to Federal Rule of Civil Procedure 78(a), the Court heard oral argument on August 29,

2017, reserved its decision, and permitted supplemental briefing post-argument. (ECF Nos. 141,

---

[1] The parties' briefs were submitted pursuant to several extended scheduling orders. (ECF Nos. 100, 114, 118, 120, 123.) After Plaintiffs filed their reply (ECF No. 127), both parties filed notices of supplemental authority for this Court's review (ECF Nos. 124 and 129). Additionally, Aetna submitted a request to file a sur-reply, with the proposed brief attached. (ECF No. 132.) In light of this decision, oral argument, and the supplemental briefings, Aetna's request to file a sur-reply is moot.

145, 147, 148.) For reasons set forth below, Plaintiffs' Motion for Class Certification is **DENIED** and Aetna's Motion to Strike is **DENIED**.

## I.   BACKGROUND[2]

Plaintiffs are healthcare providers that provide in-patient surgical services in Lutz, Florida. (ECF No. 116 at 4.) Plaintiffs do not have a contractual relationship with Aetna and are therefore considered out-of-network ("ONET") providers. (*Id.*) Aetna is a healthcare insurer and administrator of various fully-insured and self-insured health benefit plans. (*Id.*) For fully-insured plans, Aetna pays for claims out of their own fund and collects a premium from the plan's sponsor.[3] (ECF No. 122 at 5-6.) For self-insured plans, Aetna also pays for claims out of their own fund, but collects an administrative fee and is reimbursed for claim payments from the plan's sponsor. (*Id.* at 6, 9.)

When processing claims, Aetna uses one of two systems:



---

[2] The parties dispute the method by which Aetna processes its claims and offsets its payments. Because the Court may address the merits of the case and look beyond the pleadings on a motion for class certification, *In re Hydrogen Peroxide*, 552 F.3d 305, 310 (3d Cir. 2008) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630 (1997)), below is a comprehensive summary of the facts based on a reading of the papers submitted in connection with this motion. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 ("It may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."). Any factual findings are made for the purpose of this motion only.

[3] Plan sponsors are employers contracting with Aetna for a health benefit plan. (ECF No. 122 at 5-6.)

Because a high volume of claims is processed every day, Aetna contends it consequently and occasionally overpays healthcare providers for services rendered in treating patients. (ECF No. 122 at 6.) ███████████████████████████████████

███████ ) When overpayments are identified, Aetna notifies the appropriate provider by letter and requests a refund for the overpaid amount. (ECF No. 122 at 6.) The letter states: "If [Aetna] do[es] not receive confirmation concerning a payment or receive a refund check, [Aetna] may deduct [the overpayment amount] from your next claim payment." (Aetna Repayment Demand Letter (ECF No. 116-13) at 3.) If the provider does not dispute the overpayment, Aetna offsets the overpaid amount by reducing a future payment issued to the provider. (ECF No. 122 at 7.)

Plaintiffs challenge Aetna's recovery policy. (ECF No. 116 at 2.) According to Plaintiffs, Aetna's recovery policy permits "cross-plan" offsets by withholding "amounts allegedly overpaid [to] providers on behalf of [] Plan A[4] (for services rendered to Plan A insureds) from payments due [to] providers of Plan B benefits (for services provided to Plan B insureds)." (*Id.* at 11.) By way of example, Plaintiffs allege, on June 5, 2014, Aetna paid NYC Chiro $270.00 for treating a patient insured with the Amtrak's insurance plan ("Plan A"). (ECF No. 116 at 8.) Aetna allegedly overpaid NYC Chiro and requested a refund, which NYC Chiro never issued. (*Id.*) Thereafter, NYC Chiro treated a different patient with a different insurance plan—the M&M insurance plan ("Plan B")—and submitted a claim for $423.00. (*Id.*) Rather than issue payment in full, Aetna paid NYC Chiro only $153.00, which was the difference between the reimbursed amount for treatment

---

[4] "Plan A" and "Plan B" etc. are used throughout to distinguish, generally and by way of example, different employer-sponsored plans.

of the second patient and the overpaid amount for treatment of the first patient. (*Id.*) Aetna's ███ then credited $270.00, the amount overpaid and recovered through Plan B, to Plan A.[5] (*Id.* at 8-9.)

According to Aetna, however, offsets are processed with thousands of rules affecting validation and recovery for overpayments, and vary plan-to-plan, provider-to-provider, and claim-to-claim. (ECF No. 122 at 7-8.) By way of example, in the ██████ the plan language regarding offsets ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██ In the

████████████ Plan, the plan language regarding offsets ███████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ In

th ██████████ Plan, however, the plan language ████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████ Nevertheless, Aetna emphasizes the "offsets do *not* impact the benefits provided to members, *nor* do they involve the commingling or diversion of the assets of different plans"; the offsets occur at the payment level and are unrelated to the plans' benefits. (ECF No. 122 at 2, 25.)

Plaintiffs Aetna's alleges "cross-plan" offsets violate § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), and constitute a wrongful denial of benefits because healthcare providers treating patients with Plan B benefits

---

[5] EOBs are issued to both the provider and the plan's sponsor to explain what services were rendered and how much was paid for those services. (ECF No. 116 at 2, 9.) Plaintiffs allege "the common evidence is that post-offset EOBs sent to providers are different from post-offset EOBs sent to [patients insured by Aetna]." (*Id.* at 9.)

never actually receive full payment from the Plan B policy.[6] (ECF No. 116 at 11.) Plaintiffs seek

injunctive and declaratory relief under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), asking this

Court to: (1) enjoin Aetna from continuing "cross-plan" offsets; (2) declare the action illegal; and

(3) grant other appropriate equitable relief. (*Id*. at 12.)

## II.    PROPOSED CLASS

Plaintiffs seek to certify a single class pursuant to Federal Rule of Civil Procedure

23(b)(1)(A), (b)(2), or (b)(3) based on the following proposed class definition:

> All persons who sought a health insurance benefit payment from an
> Aetna health insurance plan governed by ERISA, for covered
> services rendered by an ONET provider, but Aetna withheld all or a
> portion of such benefit payment in order to recover a prior alleged
> overpayment made to the same ONET provider for covered services
> rendered to a different patient insured under a different plan.

(*Id*. at 12.)

## III.   ERISA

Section 502(a) serves as the civil enforcement provision to assert a private right of action

under ERISA. 29 U.S.C. § 1132(a). Under Section 502(a) of ERISA, a plan "participant" or

"beneficiary" has standing to bring a civil action "to recover benefits due to him under the terms

of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

under the terms of the plan." *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement*

*Plan*, 388 F.3d 393, 400 (3d Cir. 2004) (quoting 29 U.S.C. § 1132(a)(1)(B)). A plan "participant"

is defined as "any employee or former employee of an employer . . . who is or may become eligible

to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). A

"beneficiary" is defined as "a person designated by a participant, or by the terms of an employee

---

[6] Under § 502(a)(1)(B) of ERISA, a civil action may be brought "to recover benefits due to
[participants or beneficiaries] under the terms of [their] plan, to enforce [their] rights under the
terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan."

benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The right to bring a civil action under ERISA extends to healthcare providers who "obtain derivative standing by assignment from a plan participant or beneficiary." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) (citing *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014)). "[A]s a matter of federal common law, when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA [Section] 502(a)." *Id.* at 372.[7]

In order to prevail on a Section 502(a)(1)(B) claim, a plaintiff must establish his or her "right to benefits that is legally enforceable against the plan, and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (citation omitted). To determine whether claims were improperly denied, the court reviews the benefit denial using an "arbitrary and capricious" standard. *Id.* at 120-21. "An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 121 (quoting Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011).

Under Section 502(a)(3) of ERISA, a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or
> practice which violates any provision of this subchapter or the terms

---

[7] Aetna challenges whether Plaintiffs and the provider class members have standing to bring an ERISA claim. (ECF No. 122 at 14-17.) Aetna argues "Plaintiffs are providers, and they have standing to sue only if they received valid assignments, and only for claims actually assigned." (*Id.* at 14 (emphasis omitted).) Specifically, Aetna argues assignments raise a number of individualized issues, including: (1) whether plan participants have an ERISA claim against Aetna; (2) whether each provider can produce a valid assignment; (3) whether each assignment covers the claims and legal theories brought against Aetna; and (4) whether the plan participants' benefit plans include an anti-assignment clause. (*Id.* at 14-17.) While the Court is cognizant of the issues and reviewed the parties' arguments with respect thereto, ultimately, the Count need not reach the issue because certification is denied on other dispositive grounds. To the extent relevant, the contested individualized issues will be discussed in the Rule 23 analysis, *infra*.

6

of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). This section provides for equitable relief for injuries not otherwise remedied under Section 502. *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

## IV.   MOTION TO STRIKE

Aetna argues Plaintiffs' rebuttal expert reports, filed with its Reply Brief in further support of its Motion for Class Certification, should be stricken because Plaintiffs' rebuttal expert reports: (1) do not rebut Aetna's expert; and (2) introduce new theories of damages unrelated to Aetna's expert and not previously disclosed during discovery. (ECF No. 130 at 12-17.) Plaintiffs argue their experts' opinions: (1) offer a proper rebuttal to Aetna's expert; and (2) provide adequate theories of relief that never mislead Aetna. (ECF No. 134 at 10-19.)

Federal Rule of Civil Procedure 26(e) states, in pertinent part:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production or request for admission—must supplement or correct its disclosure response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

"A court may exclude evidence where a party has failed to provide information as required by Rule 26 'unless the failure was substantially justified or is harmless.'" *Steele v. Aramark Corp.*, 535 F. App'x 137, 143 (3d Cir. 2013) (quoting Fed. R. Civ. P. 37(c)(1)). "The exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994).

The Court has reviewed the expert reports and finds, for the purpose of this motion, any alleged failure to disclose is harmless. The challenged reports were not relied on in reaching this decision, and therefore, the extreme sanction of excluding evidence is not warranted. Nothing contained therein would have led this Court to a different decision. *See Steele*, 535 F. App'x at 143 (noting a court may exclude evidence unless the failure to disclose under Rule 26 was harmless). Accordingly, Aetna's Motion to Strike is **DENIED**.

## V.   MOTION FOR CLASS CERTIFICATION

### A.   Legal Standard

The Third Circuit has consistently observed that "Rule 23 is designed to assure that courts will identify the common interests of class members and evaluate the named plaintiffs' and counsel's ability to fairly and adequately protect class interests." *In re Comm. Bank of N. Va.,* 622 F.3d 275, 291 (3d Cir. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 799 (3d Cir. 1995) (alterations omitted). Class certification is only appropriate "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide*, 552 F.3d 305, 309 (3d Cir. 2008) (quotation omitted). Rule 23 contains two sets of requirements. First, a party seeking class certification must demonstrate the class satisfies the requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable [(numerosity)]; (2) there are questions of law or fact common to the classes [(commonality)]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [(typicality)]; and (4) the representative parties will fairly and adequately protect the interests of the class [(adequacy)].

The court will only certify a class when all four requirements are met. *In re Hydrogen Peroxide¸* 552 F.3d at 310. Significantly, a plaintiff carries the burden to "affirmatively demonstrate his compliance" with Rule 23(a). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Additionally,

the Court must find by a preponderance of the evidence—not by mere assumption of the facts—that these requirements are met in order to rule in favor of class certification. *In re Hydrogen Peroxide*, 552 F.3d at 320.

Moreover, in addition to the Rule 23(a) requirements, class certification is only appropriate if the putative class qualifies under one of the Rule 23(b) subsections. *Id.* at 309. Under Rule 23(b)(1), a class action may be maintained if

> prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudication with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

"Rule 23(b)(1) defines two related types of class actions, both designed to prevent prejudice to the parties arising from multiple potential suits involving the same subject matter." *In re Comp. of Managerial, Prof'l & Tech. Emps. Antitrust Litig.*, No. 02-2924, 2006 WL 38937, at *4 (D.N.J. Jan. 5, 2006) (quotation omitted). Specifically, Rule 23(b)(1)(A) "addresses possible prejudice to the party opposing the class and is intended to eliminate the possibility of separate actions imposing inconsistent courses of conduct on the defendant." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006). On the other hand, Rule 23(b)(1)(B) "addresses possible prejudice to members of the proposed class, and applies if individual actions 'would have the practical if not technical effect of concluding the interests of the other members as well, or of impairing the ability of the others to protect their own interests.'" *Id.* (citation omitted).

Under Rule 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Third Circuit has regularly held certification pursuant to Rule 23(b)(2) requires cohesiveness of class claims among the class members. *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142 (3d Cir. 1998). The Third Circuit articulated the following two reasons for the cohesiveness requirement. "First, unnamed members with valid individual claims are bound by the action without the opportunity to withdraw and may be prejudiced by a negative judgment in the class action." *Id.* at 143. Second, "the suit could become unmanageable and little value would be gained in proceeding as a class action . . . if significant individual issues were to arise consistently." *Id.* In other words, "the court must ensure that significant individual issues do not pervade the entire action because it would be unjust to bind absent class members to a negative decision where the class representative['s] claims present different individual issues than the claims of the absent members present." *Barnes*, 161 F.3d at 143. Therefore, Rule 23(b)(2) is not appropriate where "significant individual liability or defense issues . . . would require separate hearings for each class member in order to establish defendants' liability." *Santiago v. City of Phila.*, 72 F.R.D. 619, 627 (E.D. Pa. 1976).

Lastly, pursuant to Rule 23(b)(3), a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

In other words, to maintain a class action under Rule 23(b)(3), the court must find "common questions of law or fact predominate over questions affecting only individual class members and the class action is the superior method for the fair and efficient adjudication of the matter." *Elias v. Ungar's Food Prods.*, 252 F.R.D. 233, 245 (D.N.J. 2007). These are known as the predominance and superiority requirements. *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009). Importantly, the predominance inquiry is especially dependent upon the merits of a plaintiff's claim, because "the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual." *In re Hydrogen Peroxide¸* 552 F.3d at 310-11 (citations omitted). "If proof of the essential elements of the cause of action requires individual treatment," then predominance is defeated and a class should not be certified. *Id.* (quoting *Newton*, 259 F.3d at 172); *see In re Constar*, 585 F.3d at 780.

Furthermore, in deciding whether to certify a class, it "may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Newton v. Merrill Lynch*, 259 F.3d 154, 166 (3d Cir. 1998). Indeed, the Third Circuit has set forth "three key aspects of class certification procedure." *In re Hydrogen Peroxide*, 552 F.3d at 307.First, the court's decision to certify a class requires factual determinations in support of each Rule 23 requirement by a preponderance of the evidence, "not merely a 'threshold showing' by a party." *Id.* "Second, the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.* Lastly, "the court's obligation to consider all relevant evidence and arguments extends to expert testimony, whether offered by a party seeking class certification or by a party opposing it." *Id.*

### B.    Ascertainability

Before determining whether the Rule 23 requirements are met, the Court must first analyze whether Plaintiffs' proposed class definition is "readily ascertainable based on objective criteria." *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 478 (D.N.J. 2009). Aetna argues Plaintiffs fail to meet the ascertainability requirement to certify a class because "it is impossible to identify 'cross-plan' offsets." (ECF No. 122 at 25.) Specifically, Aetna claims its company database does not identify "cross-plan" offsets in the manner characterized by Plaintiffs and that "offsets are not 'taken' from any particular plan; each plan separately pays all of the benefits it owes and receives all of the overpayments Aetna recovers on its behalf, and offsets are simply the result of a netting out that occurs at the payment level." (*Id.* at 23-24.)

Plaintiffs, on the other hand, contend: 1) ascertainability is not required for the Rule 23(b)(1) or (b)(2) classes; and 2) the ascertainability requirement is satisfied for the Rule 23(b)(3) class. (ECF No. 116 at 38-39.) With respect to the second argument, Plaintiffs claim, "Aetna assiduously tracks data concerning all aspects of its cross-plan offsets, including the identity of providers denied benefits." (*Id.* at 39.)

In order to determine whether a proposed class is ascertainable, the Court must engage in a two-part analysis. First, the Court must determine whether the defined class specifies "a particular group that was harmed during a particular time frame, in a particular location, in a particular way." *Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 455 (D.N.J. 2009). Second, the Court must be able to ascertain the class's membership in an objective manner. *Id.*; *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (finding the Third Circuit has implemented a two-fold inquiry requiring a plaintiff to show: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition").

Significantly, in demonstrating ascertainability, a plaintiff need not identify every class member at the class certification stage; instead, a plaintiff must show that "class members can be identified." *Byrd*, 784 F.3d at 163 (citation omitted) (emphasis omitted). "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

Plaintiffs are correct that ascertainability is not required for class certification under Rule 23(b)(1) or (2). *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) (ruling that "ascertainability is not a requirement for class certification of a (b)(2) class seeking only injunctive or declaratory relief"); *Manual for Complex Litigation (Fourth)* § 21.222 (2004) ("Rule 23(b)(3) actions require a class definition that will permit identification of individual class members, while Rule 23(b)(1) or (b)(2) actions may not.").[8] Ascertainability, however, is required to certify a Rule 23(b)(3) class. *See Marcus*, 687 F.3d at 592-93 (finding "an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable").

Here, Plaintiffs have satisfied the ascertainability requirement. The class definition is comprised of objective criteria and factors, which are capable of being ascertained. However, Aetna does not base its objection on whether the proposed class members of ONET providers are identifiable. (ECF No. 122 at 25.) Aetna concedes to subjecting healthcare providers to offsets, but disputes engaging in the practice of "cross-plan" offsets. (*Id.* at 24.) This is not relevant in determining ascertainability. The ascertainability inquiry relies on identifying the potential class members (the ONET providers subject to offsets), rather than proving the class's claims (whether

---

[8] While the parties have not identified, nor has the Court found, any binding authority explicitly discussing whether ascertainability is required to certify a Rule 23(b)(1) class, the issue is not dispositive for the purposes of this motion.

Aetna engaged in "cross-plan" offsets). *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 359 (3d Cir. 2013) ("[T]he ascertainability requirement focuses on whether individuals fitting the class definition may be identified without resort to mini-trials, whereas the predominance requirement focuses on whether essential elements of the class's claims can be proven at trial."). To dispute ascertainability of a proposed class, Aetna must challenge class membership, rather than Plaintiffs' legal theories. *See Carrera v. Bayer Corp.*, 727 F.3d 300, 308 (3d Cir. 2013) ("[T]he plaintiff must demonstrate his purported method for ascertaining class members is reliable and administratively feasible, and permits a defendant to challenge the evidence used to prove class membership."). Because Plaintiffs' proposed class encompasses ONET providers who rendered and sought payment for covered services, "but Aetna withheld all or a portion of such benefit payment in order to recover a prior alleged overpayment" (ECF No. 116 at 12), the ascertainability requirement is satisfied if there is a reliable and administratively feasible mechanism to identify ONET providers harmed by Aetna's offset recovery policy. *See Byrd*, 784 F.3d at 163.

Indeed, Plaintiffs have proposed a reliable and administratively feasible mechanism to identify ONET providers who were subject to offsets. (Pls.' Reply Br. (ECF No. 127) at 23 n.23.) Aetna's Director of Recovery Operations, Christopher Sikorski ("Sikorski"), testified ███████ ██████████████████████████████████████████████ (Sikorski Dep. (ECF No. 116-2), Tr. 159:5-14.) According to Sikorski, Aetna hires overpayment analysts and works with several third-party vendors "who are responsible for identifying and recovering overpayments." (Sikorski Dec. (ECF No. 122-2) ¶ 5.) Further, according to Amy Saraco, Aetna's Director of Financial Statement Development and Operations, Aetna's ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ (Saraco Dec. (ECF

No. 122-4) ¶ 9.) Because ONET providers subject to offsets are capable of being identified through

███████████████████████, Plaintiffs have demonstrated the proposed class members

are ascertainable through a reliable and administratively feasible mechanism.

### C.    Rule 23(a) Inquiry

#### 1.    <u>Numerosity</u>

Under Rule 23(a)(1), numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In seeking to certify a class, enumeration of the class size is not necessary to satisfy the numerosity requirement. *In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 640 (D.N.J. 2004). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (citing 5 James Wm. Moore *et al.*, Moore's Federal Practice § 23.22[3][a] (Matthew Bender 3d ed. 1999)). Plaintiff, however, must present evidence for the court to make a factual determination on whether the Rule 23(a)(1) requirement was met. *In re Hydrogen Peroxide*, 552 F.3d at 307. "[I]n the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Marcus*, 687 F. 3d at 596 (3d Cir. 2012).

Here, Plaintiffs allege Aetna recovers "more than thousands" of offsets every year against "a large number" of providers. (Sikorski Dep., (ECF No. 116-2) Tr. 45:21-48:23) Aetna does not contest the satisfaction of the numerosity requirement under Rule 23(a)(1). (ECF No. 122 at 25-31.) Accordingly, the numerosity requirement is satisfied.

2.    <u>Commonality</u>

Under Rule 23(a)(2), commonality is satisfied when "there are questions of law or fact common to the class." The threshold for establishing "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596-97 (3d Cir. 2009) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). "It is well established that only one question of law or fact in common is necessary to satisfy the commonality requirement, despite the use of the plural 'questions' in the language of Rule 23(a)(2)." *In re Schering Plough*, 589 F.3d at 97 n.10. Consequently, there is a low threshold for satisfying this requirement. *Newton*, 259 F.3d at 183; *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986).

Moreover, putative class members need not share identical claims, *see Hassine v. Jeffes*, 846 F.2d 169, 176-77 (3d Cir. 1988), and "factual differences among the claims of the putative class members do not defeat certification." *Baby Neal*, 43 F.3d at 56. Rather, to satisfy commonality, a plaintiff must demonstrate the class members suffered the same injury, so that a class action would "generate common answers apt to drive the resolution of the litigation." *Bright v. Asset Acceptance, Inc.*, 292 F.R.D. 190, 201 (D.N.J. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded." *Baby Neal*, 43 F.3d at 56.

Here, Plaintiffs argue several questions of law and fact are common to all class members. (ECF No. 116 at 6-26.) Specifically, Plaintiffs assert the following common questions of law and fact: (1) whether "cross-plan" offsets are a denial of plan benefits (*id.* at 16-17); (2) whether Aetna can engage in "cross-plan" offsets without authority from a member's plan (*id.* at 18-20); (3) whether "cross-plan" offsets violate ERISA's duty of loyalty mandate (*id.* at 20-22); (4) whether

"cross-plan" offsets are prohibited self-dealing transactions (*id.* at 229-24); and (5) whether "cross-plan" offsets satisfy the common law requirements for "setoffs" (*id.* at 24-26). In response, Aetna contends the alleged common issues require individualized, fact-sensitive inquiries into each insured member's plan documents. (ECF No. 122 at 26-31.) Specifically, Aetna argues the "plan language regarding offsets is varied and robust," and therefore Plaintiffs' common issues are incapable of being resolved through a single action. (*Id.* at 26, 28.) However, "[e]ven where individual facts and circumstances do become important to the resolution, class treatment is not precluded." *Baby Neal*, 43 F.3d at 56. Rather, "[f]or purpose of Rule 23(a)(2), even a single common question will do" to satisfy the commonality requirement. *Marcus*, 687 F.3d at 597 (quotation omitted). Accordingly, Plaintiffs satisfy the commonality requirement because they share at least one common question of law or fact with the proposed class members—whether Aetna's offset practice violates ERISA. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 596-97.

In sum, the "glue" holding the class together is whether Aetna violated ERISA through alleged "cross-plan" offsets. As articulated in *Dukes*, generating common answers—not merely raising common questions—will warrant class certification. 564 U.S. at 350. The common answer to the factual question of whether Aetna violated ERISA by allegedly engaging in "cross-plan" offsets is sufficient—at least for this low-threshold requirement[9]—to advance the resolution of the entire class. Accordingly, the commonality requirement under Rule 23(a)(2) is satisfied.

---

[9] *Contra* Section IV(C)(3) discussing the disparities in the proposed common questions as they pertain to the predominance requirement for Rule 23(b)(3).

3.    Typicality

Under Rule 23(a)(3), typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The named plaintiff's claims must arise from the same event or practice or course of conduct and must be based on the same legal theory as the claims of the class members. *Brosious v. Children's Place Retail Stores*, 189 F.R.D. 138, 146 (D.N.J. 1999). Despite their similarity, commonality—like numerosity—evaluates the sufficiency of the class itself, whereas typicality—like adequacy of representation—evaluates the sufficiency of the named plaintiff. *See Hassine*, 846 F.2d at 177 n.4; *Weiss v. York Hosp.*, 745 F.2d 786, 810 (3d Cir. 1984).

The Third Circuit articulated a three-prong analysis in assessing the typicality requirement, consisting of three distinct, yet related, concerns:

> (1) the claims of the class representatives must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory;
>
> (2) the class representatives must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and
>
> (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

*Marcus*, 687 F. 3d at 598 (quoting *In re Schering Plough Corp.*, 589 F.3d at 598-99). In other words, the named plaintiff is required to be "sufficiently similar" to the class "in terms of their legal claims, factual circumstances, and stake in the litigation." *In re Schering Plough Corp.*, 589 F.3d at 597. Typicality bars certification only when "the legal theories of the named representatives potentially conflict with those of the absentees." *Georgine v. Amchem Prods.*, 83 F.3d 610, 631 (3d Cir. 1996); *Newton*, 259 F.3d 183. "It is well-established that a proposed class representative is not 'typical' under Rule 23(a) if the representative is subject to a unique defense that is likely to

become a major focus of the litigation.'" *In re Schering Plough*, 589 F.3d at 598 (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006)). Thus, "the challenge presented by a defense unique to a class representative [is that] the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class." *Beck*, 457 F.3d at 297.

Here, Plaintiffs argue their claims are typical because the "cross-plan" offsets arose "from the same event or practice or course of conduct" affecting all members of the class. (ECF No. 116 at 27.) Specifically, Plaintiffs claim the "cross-plan" offset for the initial overpayment followed by a reduced future payment to recover the overpaid amount is not "materially different from cross-plan offsets Aetna took against other members in the [c]lass." (*Id.*)

Aetna does not specifically address the typicality requirement, but advances some related arguments. (ECF No. 122 at 25-31.) Aetna contends "[e]ach provider class member's right to recover from Aetna depends on whether the initial overpayment determination was correct." (*Id.* at 13.) If the overpayment determination was correct, then the provider has not suffered an injury through an offset. (*Id.*)

Plaintiffs' claims concern the withholding of monies under Plan B, not whether the initial overpayment was correct. In other words, even if services rendered to patients with Plan A benefits were in fact overpaid, Plaintiffs' claim to damages concerns the wrongful denial on Plan B benefits for services rendered. It is not necessary to decide the merit behind this legal theory at this stage, but instead determine whether Plaintiffs' and the class members' claims arise out of the same course of conduct and are based on the same legal theory. *See Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992) (holding typicality requires that the claims of the named plaintiff and the class members arise out of the same course of conduct and are based on the same

legal theory); *In re Schering Plough Corp.*, 589 F.3d at 597 (requiring the named representative to be "sufficiently similar" to the class "in terms of their legal claims, factual circumstances, and stake in the litigation"). The Court finds, for the purpose of this Motion, the claims arise out of the same course of conduct and are based on the same legal theory. Accordingly, the typicality requirement under Rule 23(a)(3) is satisfied.

### 4.    Adequacy

Under Rule 23(a)(4), a class may not be certified unless the representative class members "will fairly and adequately protect the interests of the class." "Rule 23(a)'s adequacy of representation requirement 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (quoting *Amchem*, 521 U.S. at 625). Class representatives "must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (citation omitted).

This requirement has traditionally entailed a two-pronged inquiry: first, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; and second, the plaintiff's counsel must be qualified to represent the class. *Gen. Motors*, 55 F.3d at 800. A named plaintiff is "adequate" if his interests do not conflict with those of the class. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). Pursuant to Rule 23(g), adequacy of class counsel is considered separately from the determination of the adequacy of the class representatives.

Here, both prongs of the adequacy requirement are satisfied. First, Plaintiffs assert their "interests . . . are fully aligned with those of the proposed [c]lass." (ECF No. 116 at 28.) Second, Plaintiffs assert "proposed Class counsel consists of experienced class action attorneys from two

law firms." (*Id.*) Aetna does not contest the adequacy of Plaintiffs or class counsel. (ECF No. 122 at 25-31.) Accordingly, the adequacy requirement under Rule 23(a)(4) is satisfied.

### D.     Rule 23(b) Class Types

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish the proposed class action fits within one of the Rule 23(b) class action types. Here, Plaintiffs argue class certification would be appropriate under Rule 23(b)(1)(A), (b)(2), or (b)(3), and therefore, the Court will address each in turn.

#### 1.     Rule 23(b)(1)(A)

Plaintiffs contend class certification under Rule 23(b)(1)(A) is necessary to avoid inconsistent or varying results regarding Aetna's alleged "cross-plan" offsets practice. (ECF No. 116 at 30.) Specifically, Plaintiffs argue "[o]nly through class certification of Plaintiffs' claims can Aetna . . . be assured of a single legal rule endorsing or rejecting Aetna's theory that ["cross-plan" offsets] can lawfully operate free of [p]lan or ERISA constraints." (ECF No. 116 at 31.) In response, Aetna argues a Rule 23(b)(1)(A) class is not appropriate because administering plans according to varying plan documents raises individualized issues. (ECF No. 122 at 37, 39.) Further, Aetna argues adjudication of separate lawsuits would not yield inconsistent results, as Plaintiffs contend, because, "[e]ven if one plaintiff obtained an injunction prohibiting 'cross-plan' offsets, there is no reasonable possibility that a court would enter a conflicting order in another case requiring Aetna to use 'cross-plan' offsets." (*Id*. at 38 (emphasis omitted).)

Under Rule 23(b)(1)(A), a class qualifies for certification if "inconsistent or varying adjudications with respect to individual class members [] would establish incompatible standards of conduct for the party opposing the class." "Rule 23(b)(1)(A) 'takes in cases where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as

a matter of practical necessity . . . .'" *Amchem Prods.*, 521 U.S. at 614 (citation omitted). Certification is justified when "individual adjudication would be impossible or unworkable." *Dukes*, 564 U.S. at 362.

Moreover, Rule 23(b)(1)(A) "addresses possible prejudice to the party opposing the class and is intended to eliminate the possibility of separate actions imposing inconsistent courses of conduct on the defendant." *Beck*, 457 F.3d at 301. To certify a class under Rule 23(b)(1)(A), the Court must determine whether varying adjudications of duplicative lawsuits would establish incompatible standards. *In re Merck & Co.*, No. 05-1151, 2009 WL 331426, at *11 (D.N.J. Feb. 10, 2009) (finding Rule 23(b)(1)(A) "only requires that varying adjudication would establish incompatible standards"). Incompatible standards of conduct refer to "the situation in which different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." *Wright, Miller, Kane, et al.*, 7AA Fed. Prac. & Proc. Civ. § 1773 (3d ed.).

The record does not support a finding that separate lawsuits would result in incompatible standards of conduct for Aetna. Therefore, Plaintiffs have not met their burden in demonstrating certification under Rule 23(b)(1)(A) is appropriate. *See Byrd*, 784 F.3d at 163 ("[T]he party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23."); *Parsons v. Philadelphia Parking Auth.*, Civ. A. No. 13-0955, 2016 WL 538215, at *2 (E.D. Pa. Feb. 11, 2016) (denying certification under Rule 23(b)(1)(A) because "plaintiff [did] not me[e]t her burden to show that the prosecution of separate actions would create a risk of multiple actions that would establish incompatible standards of conduct or that the denial of class certification would substantially impair or impede the ability of other putative class members to protect their

interests"), appeal dismissed (Apr. 5, 2016). Indeed, Plaintiffs only advance a conclusory claim that uniform adjudication is required because Aetna is engaged in a "uniform" practice of "cross-plan" offsets. (ECF No. 116 at 30; ECF No. 127 at 12.) However, the relevant inquiry to certify a Rule 23(b)(1)(A) class does not hinge solely on the risk of varying adjudication against a defendant for an alleged uniform practice, but rather on whether varying adjudication regarding that uniform practice would result in incompatible standards of conduct. *See Bennet v. Corr. Med. Servs.*, No. 02-4993, 2008 WL 2064202, at *14 (D.N.J. May 14, 2008) ("The fact that some plaintiffs may be successful in their suits against a defendant while others may not is clearly not a ground for invoking Rule 23(b)(1)(A)." (citation omitted)). Based on the record before the Court, it is unlikely Aetna would be required to adopt incompatible standards of conduct regarding its alleged "cross-plan" offset practice.

Class certification under Rule 23(b)(1)(A) is also not suitable because Aetna's duties differ from plan to plan. As a fiduciary on an ERISA plan, the "plan document rule" requires Aetna to discharge its duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D); *see also Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001). Therefore, to determine whether this ERISA provision was violated, the Court must scrutinize each members' plan documents. *See Kennedy v. Plan Admin. for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009) (finding a party's claim "stands or falls by the 'terms of the plan'"). While class certification is appropriate where "individual adjudication would be impossible or unworkable," the Court is not faced with that situation here. *Dukes*, 564 U.S. at 362. Individual adjudication in this case is not only possible and workable, but required.

Moreover, the underlying facts in each class member's claim—denial of benefits through "cross-plan" offsets—is particularized to the individual and would require a determination of each

benefit plan's documents. Thus, any injunction that might be issued would be limited to the characteristics of the plan documents in the particular lawsuit. For the reasons discussed, Plaintiffs' conclusory arguments do not meet their burden of establishing the appropriateness of class certification under Rule 23(b)(1)(A). Accordingly, Plaintiffs' Motion to Certify a Class under a Rule 23(b)(1)(A) is **DENIED.**

2.      Rule 23(b)(2)

Plaintiffs contend class certification is proper under Rule 23(b)(2). (ECF No. 116 at 31.) Specifically, Plaintiffs argue Aetna's "cross-plan" offset practice is uniform, and a single injunction can remedy the class-wide denial of plan benefits. (*Id.* at 32; ECF No. 127 at 14-15.) In response, Aetna argues a Rule 23(b)(2) class is not appropriate because: (1) various individualized issues, including language of plan documents, provider's standing to sue, and applicable state laws preclude a class-wide injunction; and (2) individualized claims for monetary relief preclude certification under Rule 23(b)(2). (ECF No. 122 at 35-36.)

Under Rule 23(b)(2), the Court must find "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Supreme Court has held the "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted— the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* at 374. In other words, certifying a Rule 23(b)(2) class "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* at 360. Thus, "[c]laims for individualized relief may not be certified under 23(b)(2), nor may claims for monetary relief that are 'not incidental to the injunctive or

declaratory relief.'" *Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279, 291 (D.N.J. 2013) (quoting *Dukes,* 564 U.S. at 360).

In addition, under Rule 23(b)(2) a plaintiff must show the class claims are cohesive among the class members. *See Gates v. Rohm & Haas Co.*, 665 F.3d 255, 263-64 (3d Cir. 2011). Cohesiveness is a primary requirement "because in a (b)(2) action, unnamed members are bound by the action without the opportunity to opt out." *Barnes*, 161 F.3d at 142-43. Certification under Rule 23(b)(2) is not appropriate when "disparate factual circumstances of class members" fail to meet the cohesiveness requirement. *Id*. at 265 (citing *Carter v. Butz*, 479 F.2d 1084, 1089 (3d Cir. 1973)). "Accordingly, our Circuit has held that district courts have the discretion to deny certification under (b)(2) when a given case presents 'disparate factual circumstances,' or a prevalence of individualized issues." *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2012 WL 379944, at *38 (D.N.J. Feb. 6, 2012) (quoting *Barnes*, 161 F.3d at 143).

Here, Plaintiffs do not seek monetary claims, but rather a single injunction ordering Aetna to reprocess previously denied claims without subjecting the claims to "cross-plan" offsets. (ECF No. 127 at 14.) Plaintiffs rely on the holding in *DeMaria*, where the court found an order to reprocess claims was an appropriate remedy for an alleged ERISA violation. 2015 WL 3460997, at *7. The court in *DeMaria*, however, granted the reprocessing remedy under Rule 23(b)(3). *Id.* Therefore, Plaintiffs' argument is misplaced.

Plaintiffs' demand to reprocess claims is more akin to the ruling in *Premier Health Ctr., P.C., v. UnitedHealth Grp*., 292 F.R.D. 204, 228 (D.N.J. 2013), where the court found the ERISA recoupment class failed to satisfy the requirements for Rule 23(b)(2) because the class sought "injunctive relief based on inadequate notice of and opportunity to appeal [the defendant's] overpayment determination under ERISA, not a finding that [the defendant's] overpayment

25

determination were themselves arbitrary and capricious."[10] Likewise, Plaintiffs seek injunctive relief and a determination that "Aetna's cross-plan offsets[,] taken without regard to [p]lan terms[,] are illegal," but do not contend Aetna's overpayment determinations were themselves arbitrary and capricious. (ECF No. 116 at 12.) Indeed, Plaintiffs argue "cross-plan" offsets are unlawful "regardless of the merits of Aetna's overpayment claims." (ECF No. 127 at 15 (emphasis omitted).) However, reprocessing previously recovered benefits Aetna overpaid would "amount to effecting equitable restitution without showing that those benefits rightly belong to the class members." *Premier Health*, 292 F.R.D. at 228. Because equitable restitution is only appropriate "where money . . . belong[s] in good conscience to the plaintiff," *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002), and Plaintiffs here do not dispute the merits of the overpayment decision, reprocessing previously denied claims would not be a proper remedy in this case.

Plaintiffs also seek to enjoin Aetna from continuing its alleged "cross-plan" offset practice. (ECF No. 116 at 12.) Notwithstanding the request to reprocess claims as an equitable remedy, class certification under Rule 23(b)(2) also fails because enjoining Aetna's offset practice would not provide generally applicable class-wide relief. Plaintiffs' claims revolve around whether Aetna can take "cross-plan" offsets without regard to the plan documents' written terms. (ECF No. 116 at 1.) Plaintiffs' claims, however, raise a number of individualized issues, subject to various standards of review and provision formulations that could yield different results concerning the legality of Aetna's offset practice. *See Lipstein*, 296 F.R.D. at 292; *Santiago*, 72 F.R.D. at 627 (finding Rule 23(b)(2) is not appropriate where "significant individual liability or defense issues . . . would

---

[10] The Court recognizes certification was ultimately granted in *Premier Health Ctr. v. UnitedHealth Grp.,* No. 11-425, 2014 WL 4271970, at *2 (D.N.J. Aug. 28, 2014), but only after plaintiffs "cure[d] the defect noted by the [c]ourt in its prior opinion." *Id.* at *29. Presently, Plaintiffs' proposed class is more analogous to that of the 2013 *Premier Health* decision.

require separate hearings for each class member in order to establish defendants' liability"). Indeed, Aetna has multiple plan sponsors and multiple agreements with varying language in the plan documents. Several plan documents expressly authorize Aetna to offset future payments, whereas other plans only allow Aetna to recover overpayment. For example, in the UPS Plan, "the Plan has a right to recover benefits that were paid in error . . . as determined by [Aetna] . . . . [and b]enefits may be recovered . . . by an offset of future benefits equal to the amount of the overpayment." (Ex. 74, (ECF No. 122-10) at 102.) The Home Depot Plan allows for "the right to recover the amount of the overpayment for any person . . . to which the payment was made." (*Id.*, Ex. 66 at 6.) "Merely answering the question of whether a single injunction could provide class-wide relief would require individualized, plan-by-plan determinations, because this case is, at its heart, a contract dispute." *Lipstein*, 296 F.R.D. at 292.

Because ERISA mandates administrators operate in accordance with the plan documents, the issue of whether Aetna's offset practice was unauthorized relies heavily on the varying language and terms in the plan documents for each individualized plan. Due to the multiple plan sponsors and multiple, varying benefit plan agreements, the factual distinctions among the plans do not satisfy the cohesiveness requirement under Rule 23(b)(2). *See Gates*, 655 F.3d at 265 (denying Rule 23(b)(2) certification where individualized issues of members' "characteristics and medical histories" made certification inappropriate). Accordingly, Plaintiffs' Motion to Certify a Class under a Rule 23(b)(2) is **DENIED.**

### 3.   Rule 23(b)(3) – Predominance Requirement

Plaintiffs claim class certification is proper under Rule 23(b)(3). (ECF No. 116 at 32.) Specifically, Plaintiffs argue Aetna's "cross-plan" offset practice affecting the payment of plan benefits under ERISA predominates over individualized issues. (*Id.* at 34.) In response, Aetna

argues class certification under Rule 23(b)(3) fails because numerous individualized issues predominate over Plaintiffs' alleged common issues. (ECF No. 122 at 31-32.)

To certify a class under Rule 23(b)(3), the Court must find "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." To satisfy the predominance requirement, the proposed class must be "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 624. Thus, "the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). Further, in determining whether common questions predominate, courts have focused on the claims of liability against defendants. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977). *Smith v. Suprema Specialties, Inc.*, No. 02-168, 2007 WL1217980, at *9 (D.N.J. 2007) (citations omitted) ("The focus of the predominance inquiry is on liability, not damages."). The Court will examine in turn whether the several common issues advanced by Plaintiffs predominate over individualized issues.

i.       *Whether "Cross-Plan" Offsets are a Denial of Plan Benefits*

The first proposed common question of law or fact is whether Aetna's "cross-plan" offsets constitute a denial of plan benefits. (ECF No. 116 at 7.) Plaintiffs allege Aetna's EOB letters have standard language relating to the recovery and payments issued to providers. (*Id.* at 6.) Specifically, Plaintiffs state "offsets take place when, pursuant to [a] single [r]ecovery [p]olicy, Aetna's [] benefits payment system electronically calculates a payment to a provider." (*Id.*) In response, Aetna argues the offsets occur at the payment level and money is not transferred between

28

plans. (ECF No. 122 at 24.) More specifically, Aetna contends any denial of plan benefits would warrant a fact-specific inquiry, impossible for the Court to categorically adjudicate under ERISA. (*Id.* at 26.)

Here, even accepting Plaintiffs' theory, the issue of whether "cross-plan" offsets constitute a denial of plan benefits is not a common question of law or fact that predominates over individualized issues. Contrary to Plaintiffs' assertions, there is no uniform "recovery policy" to which Plaintiffs direct the Court. (ECF No. 116 at 33-34.) Rather, Aetna contracts with several plan sponsors, agreeing to various recovery terms that differ among plans. For example, Aetna's recovery agreement in the ███████ Plan states: ████████████████████████████ ████████████████████████████████████████ (Chorba Dec., Ex. ████████████████.) In contrast, the ████████████ Plan states if ████████████████████████████████████████████████ ████████████████████████████ (Chorba Dec., Ex. 65 (ECF No. 122-9) at 76.) Where the former plan generally stipulates ████████████████████ ████████ the latter specifically stipulates ████████████████████████ ████████

Because policy agreements among numerous plan sponsors vary considerably in specific language and terms, determining whether the offset constituted a denial of plan benefits would require an individual analysis into each plan's recovery policy. In *Franco v. Conn. Gen. Life Ins. Co.*, for example, the court denied class certification because "critical liability questions presented by the ERISA claims depend[ed] on plan language," which would have required individualized inquiries. 289 F.R.D. 121, 135 (D.N.J. 2013). Resolving the ERISA claims would have entailed "an examination of what ONET benefits a plan entitled a participant . . . and what authority a plan

allowed the administrator." *Id.* Thus, the court held "[p]redominance as to factual or legal issues therefore depends on uniformity or at least substantial similarity in key plan language as to the entire ERISA [c]lass." *Id.* Because the plaintiffs lacked proof of substantial similarity or "uniformity among plans as to actual plan language," the court found the predominance requirement was not satisfied. *Id.* Plaintiffs' proposed class action faces the same hurdle here. The issue of whether benefits among several different plans were wrongfully denied relies on the individualized plan language. Accordingly, this question of law or fact does not predominate over individualized issues.

> ii.   *Whether Aetna May Take "Cross-Plan" Offsets Without Plan Authority.*

The second proposed common question of law or fact is whether Aetna can take "cross-plan" offsets without plan authority. (ECF No. 116 at 18-19.) In response, Aetna argues "individualized inquiries would be necessary to determine what each plan states regarding Aetna's latitude in taking offsets." (ECF No. 122 at 27.)

As set forth above, the "plan document rule" requires a fiduciary on an ERISA plan to discharge their duties "in accordance with the documents and instruments governing the plan." *Egelhoff*, 532 U.S. at 147. *See supra* at 18. Therefore, the Court must scrutinize the plan documents to determine whether this ERISA provision was violated. *See Kennedy*, 555 U.S. at 286 (finding a party's claim "stands or falls by the 'terms of the plan'"). In *Kennedy*, the Supreme Court held a beneficiary's waiver of plan benefits is ineffective where the waiver is inconsistent with plan documents. *Id.* at 303. Significantly, Plaintiffs construe *Kennedy* to hold benefits are required to be paid even if the beneficiary consents to waiving those benefits. (ECF No. 116 at 19; ECF No. 127 at 4, 14.) However, the Supreme Court found the beneficiary's waiver to be ineffective irrespective of the beneficiary's consent because the waiver was not part of the plan documents.

*Kennedy*, 555 U.S. at 289. The issue in *Kennedy* did not concern whether a plan member may relinquish his or her rights, but rather that "ERISA provides no exception to the plan administrator's duty to act in accordance with plan documents." *Id.* at 286.

Here, Aetna has multiple agreements with multiple plan sponsors governed by individualized plan documents. Resolving an ERISA claim requires "an examination of . . . what authority a plan allowed the administrator." *Franco*, 289 F.R.D. at 135. As demonstrated in the examples above, *supra* at 23, several benefit plans expressly authorize Aetna to offset future payments, whereas other plans only allow Aetna to recover overpayment. Because ERISA mandates administrators operate in accordance with the plan documents, the issue of whether Aetna's offset practice was unauthorized relies heavily on the varying language and terms in the plan documents for each individualized plan. Accordingly, this question of law or fact does not predominate over individualized issues.

> iii.   *Whether Aetna's "Cross-Plan" Offsets Violate Aetna's ERISA-Mandated Duty of Loyalty.*

The third proposed common question of law or fact is whether Aetna's "cross-plan" offset practice violates the "duty of loyalty" mandate under ERISA. (ECF No. 116 at 20-22.) Plaintiffs argue the "cross-plan" offsets are inconsistent with ERISA's duty of loyalty because assets of one plan cannot be used to resolve another plan's claim. (*Id.* at 20-21.) Aetna argues its fiduciary duty is governed by each individual health plan and each plan differs in the scope of those duties. (ECF No. 122 at 29; Chorba Dec. (ECF No. 122-5) at 14-15.)

Under § 404(a)(1)(A)(i) of ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." Here, even accepting Plaintiffs' assertions, individualized issues predominate over common questions of law or fact, because

Aetna's role as a fiduciary may vary based on the language of the different administrative service agreements between plan sponsors and Aetna. For example, Aetna's contract with ███████ ███████ a plan sponsor, states: ██████████████████████████████████████ ██████████████████ (Chorba Dec., Ex. ██████████████ Similarly, the ███ ███ agreement states, "████████████████████████████████████ However, Aetna's agreement with ██████████ states: "████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████ " (*Id.*, ██████████.) To determine whether Aetna breached its ERISA mandated duty of loyalty, a class-wide resolution would require an examination of each administrative services contract between the plan sponsors and Aetna to establish the extent of Aetna's liability and scope of duty as a fiduciary. Accordingly, this question of law or fact does not predominate over individualized issues.

> iv.    *Whether Aetna's "Cross-Plan" Offsets Are Prohibited Self-Dealing Transactions.*

The fourth proposed common question of law or fact is whether Aetna's "cross-plan" offsets are prohibited self-dealing transactions. (ECF No. 116 at 22-24.) Plaintiffs allege Aetna attempts to reduce its own liability by using one plan's benefits to resolve an overpayment of another plan's benefits. (*Id.* at 23-25.) Aetna argues any potential liability to plan sponsors for overpayments hinges on a plan-specific analysis. (ECF No. 122 at 30.)

Here, even accepting Plaintiffs' argument, the variability among contractual agreements plan sponsors have with Aetna would require an individualized approach to determine whether Aetna effectuated its recovery policy to avoid liability. Liability hinges on the language and terms of the plan documents and contracts that plan sponsors enter into with Aetna. For example, Aetna's contract with ██████████ states: "████████████████████████████████████



Dec., ██████████████.) Aetna's contract with ████████, however, states Aetna ████████████████████████████ and, ████████████████████ ████████████████████████████████████ ████████████████████████████████" (*Id.*, Ex. ██████5.) Further, Aetna's contract with ██████████ states: "████████████████ ████████████████████████████████████ ██████████" (*Id.,* Ex. ████████.) Determining whether Aetna offsets claims to reduce exposure to potential liability would require a fact sensitive inquiry into each plan sponsor's agreement with Aetna, followed by individual determinations of whether Aetna's recovery efforts violated those agreements. Whether "cross-plan" offsets are prohibited self-dealing transactions hinges on Aetna's conduct between various plan sponsors and adherence to their contractual obligations. Accordingly, this question of law or fact does not predominate over individualized issues.

> v. _Whether Aetna's "Cross-Plan" Offsets Satisfy Common Law_
> _Requirements for Setoffs._

The fifth common question of law or fact is whether Aetna's "cross-plan" offsets satisfy common law requirements for setoffs. (ECF No. 116 at 24-26.) Plaintiffs argue "cross-plan" offsets violate the common law setoff requirements. (*Id.* at 24.) In response, Aetna argues different plan agreements determine different setoff rights and common law setoff requirements vary in different states. (ECF No. 122 at 30-31.) The Court finds there is little applicability of how the common law requirement of setoff applies to this matter. First, "[t]he equitable right of setoff has long been recognized in bankruptcy." *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 57 (3d Cir. 1990). "The rule allows parties that owe mutual debts to state the accounts between them, subtract one from the other and pay only the balance." *Id.* "The right of setoff

depends on the existence of mutual debts and claims between creditors and debtors." *Id.* The Court finds this doctrine pertains to creditor-debtor relationships in the bankruptcy context. Plaintiffs fail to cite an authority relating ERISA claims to common law setoff requirements. Accordingly, in light of the numerous individualized issues that arise from Plaintiffs' claims, this question of law or fact does not predominate.

### 4.   Rule 23(b)(3) – Superiority Requirement

The Court, having reviewed Plaintiffs' arguments in support of Rule 23(b)(3) class certification, finds questions of law or fact purported to be common to the members of the class do not predominate over questions affecting individual members. For similar reasons, the Court finds a class action would not be a superior manner of resolving the claims. In determining whether the superiority requirement is met, courts "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential Ins. Co.,* 148 F.3d at 316 (internal citation omitted). Because a host of individual issues would surface at trial, *supra* at 25-30, Plaintiffs will not be able to attain "classwide relief in a cohesive and manageable manner." *Franco*, 289 F.R.D. at 141; *see also Sullivan*, 667 F.3d at 335 ("A key question in a litigation class action is manageability – how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof."). Thus, Plaintiffs' class claims do not constitute "the best available method for the fair and efficient adjudication of the controversy." *Newtown*, 259 F.3d at 191 (citation omitted). Accordingly, Plaintiffs' Motion to Certify a Class under a Rule 23(b)(3) is **DENIED.**

### E.   Rule 23(c)(4)

In the alternative to certification under the Rule 23(b) subsections, Plaintiffs argue class certification is appropriate under Rule 23(c)(4). (ECF No. 116 at 37.) Specifically, Plaintiffs argue

"the common issues identified . . . can and should be resolved on a class-wide basis even if this Court determines that Rule 23(b) certification is not warranted." (ECF No. 116 at 38.) Under Rule 23(c)(4), "an action may be brought or maintained as a class action with respect to particular issues." However, "Rule 23(c)(4) is only proper if the other requirements of Rule 23(a) and (b) are first met." *Rowe*, 262 F.R.D. at 467. Plaintiffs maintain, at minimum, the common questions they identified would be appropriate for limited issue certification under Rule 23(c)(4). (ECF No. 116 at 37-38.)

   While Plaintiffs have may satisfied some of the Rule 23(a) requirements, the Court has found class certification is improper under Rule 23(b)(1), (b)(2), and (b)(3), and in doing so, found Plaintiffs' proposed common questions do not warrant a class-wide resolution. *See Luppino v. Mercedes Benz USA*, No. 16-3762, 2017 WL 6015698, at *2 (D.N.J. Dec. 5, 2017) (finding "[f]ailure to meet any Rule 23(a) and (b)'s requirements precludes class certification" (citing *In re LifeUSA Holding, Inc.*, 242 F.3d 136, 147 (3d Cir. 2001))). Indeed, the five common issues proposed by Plaintiffs still leave a host of individualized issues to be resolved and, therefore, certifying a class will not materially advance resolution of the class members' claims. *Gates*, 655 F.3d at 272-75 (affirming the lower court's decision to deny Rule 23(c)(4) class because "an issue class was not feasible and would not advance the resolution of class members' claims"); *see also Franco v. Conn. Gen. Life Ins. Co.*, 299 F.R.D. 417, 433-34 (D.N.J. 2014) ("[I]ssue certification, as permitted by Rule 23(c)(4), would not advance the resolution of the claims, and thus action does not warrant exercise of the [c]ourt's discretion to certify certain issues.") Accordingly, Plaintiffs' Motion to Certify a Class under Rule 23(c)(4) is **DENIED**.

**VI.     CONCLUSION**

For the reasons set forth above, Aetna's Motion to Strike (ECF No. 130) is **DENIED**, and

Plaintiffs' Motion to Certify a Class (ECF No. 116) is **DENIED**. An appropriate order will follow.

**Date:** March 29, 2018                                 */s/ Brian R. Martinotti*
                                                         **HON. BRIAN R. MARTINOTTI**
                                                         **UNITED STATES DISTRICT JUDGE**